

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00387-CR

JOHN DAN HOGAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

In three related issues, appellant John Dan Hogan appeals his conviction for driving while intoxicated (DWI).[1]  He contends that the trial court erred by denying his motion to suppress evidence that the police obtained after arresting him.  We affirm.

---

[1]*See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.").

## Background Facts

On an early fall morning in 2008, Fort Worth Police Department Officer C.D. Harris was on patrol when he heard another officer, who was on a bike, say on the radio that a car was driving dangerously and going the wrong way on a one-way street. Officer Harris found a car that matched the description that he had been given; the car had just been stopped because of another patrol officer's command. As appellant stepped out of the car, Officer Harris placed handcuffs on him.[2] Officer Harris noticed that appellant smelled like alcohol, had bloodshot and watery eyes, had slurred speech, and was swaying and unsteady. Appellant failed three field sobriety tests; he showed six clues of intoxication on the horizontal-gaze-nystagmus test, six clues on the walk-and-turn test, and three clues on the one-leg-stand test.[3]

Officer Harris placed appellant in the patrol car and took him to jail. Officer Harris then read the statutory warning to appellant about providing a breath specimen, and appellant refused to give one. After giving appellant the walk-and-turn and one-leg-stand tests again in an intoxilyzer room, Officer Harris placed appellant in a holding cell while he typed a search warrant affidavit to draw appellant's blood because appellant had refused the breath test.

---

[2]Officer Harris said that he placed handcuffs on appellant because appellant had evaded arrest.

[3]Officer Harris opined during the motion to suppress hearing that appellant was "highly intoxicated."

2

A municipal magistrate read the affidavit and signed the warrant, and Officer Harris took appellant to a hospital, where a medical professional took appellant's blood sample.[4]

The State charged appellant with DWI. Appellant filed a motion to suppress evidence related to his blood draw and statements that he made to the police after his arrest. After an evidentiary hearing, the trial court granted the suppression of appellant's statements but denied appellant's motion relating to the blood draw. About a month later, under a plea agreement, appellant pled nolo contendere. The trial court sentenced him to 365 days' confinement, but it suspended the sentence and placed him on two years' community supervision. Appellant preserved his right to bring this appeal.

## The Denial of Appellant's Motion to Suppress

In three related issues, appellant argues that (1) the search warrant issued to obtain his blood specimen was not supported by probable cause and therefore violated the United States and Texas constitutions, and (2) the affidavit supporting the warrant did not comply with article 18.01 of the code of criminal procedure because it did not contain sufficient facts showing probable cause that an offense had been committed.[5]

---

[4]The parties did not present evidence during the suppression hearing about the result of appellant's blood test.

[5]Appellant states that his issues, which all concern probable cause, rely on "identical facts." Although appellant contends that the Texas constitution provides greater protection regarding search warrants than the United States

3

**Standard of review and applicable law**

The police may obtain a defendant's blood for a DWI investigation through a search warrant. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002); *see* Tex. Code Crim. Proc. Ann. art. 18.01(j) (Vernon Supp. 2010); *State v. Johnston*, 305 S.W.3d 746, 750 (Tex. App.—Fort Worth 2009, pet. granted). A search warrant cannot issue unless it is based on probable cause as determined from the four corners of an affidavit. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b) ("A sworn affidavit . . . establishing probable cause shall be filed in every instance in which a search warrant is requested."); *Nichols v. State*, 877 S.W.2d 494, 497 (Tex. App.—Fort Worth 1994, pet. ref'd). When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Rodriguez v. State*, 232 S.W.3d 55, 59–60 (Tex. Crim. App. 2007) ("[E]ven in close cases we give great deference to a magistrate's determination of probable cause to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement."); *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004);

Constitution, he does not particularly explain what that greater protection comprises or how it affects the probable cause standard. Thus, we will examine appellant's issues together. *See Arnold v. State*, 873 S.W.2d 27, 33 & n.4 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S. 830 (1994); *Garcia v. State*, 239 S.W.3d 862, 868 n.3 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd), *cert. denied*, 129 S. Ct. 505 (2008).

*Emenhiser v. State*, 196 S.W.3d 915, 924–25 (Tex. App.—Fort Worth 2006, pet. ref'd).

Under the Fourth Amendment and the Texas constitution, an affidavit supporting a search warrant is sufficient if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Swearingen*, 143 S.W.3d at 810–11; *Nichols*, 877 S.W.2d at 497. Probable cause exists to issue an evidentiary search warrant if the affidavit shows facts and circumstances to warrant a person of reasonable caution to believe that the criteria set forth in article 18.01(c) of the code of criminal procedure have been met. *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. [Panel Op.] 1982); *see* Tex. Code Crim. Proc. Ann. art. 18.01(c). The affidavit must set forth facts establishing that (1) a specific offense has been committed, (2) the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense, and (3) the item is located at or on the person, place, or thing to be searched. *See* Tex. Code Crim. Proc. Ann. art. 18.01(c); *Tolentino*, 638 S.W.2d at 501.

A reviewing court should not invalidate a warrant by interpreting the affidavit in a hypertechnical manner. *See Rodriguez*, 232 S.W.3d at 59; *Tolentino*, 638 S.W.2d at 501 (explaining that "[n]o magical formula exists" for an affidavit's explanation of probable cause); *Nichols*, 877 S.W.2d at 498. Rather, when a court reviews an issuing magistrate's determination, the court should interpret the affidavit in a commonsense and realistic manner, recognizing that

5

the magistrate may draw reasonable inferences. *See Rodriguez*, 232 S.W.3d at 61 ("When in doubt, we defer to all reasonable inferences that the magistrate could have made."); *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006); *Nichols*, 877 S.W.2d at 498. "The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that are in the affidavit, not those that are omitted from the affidavit." *Rodriguez*, 232 S.W.3d at 62; *see Nichols*, 877 S.W.2d at 498 ("A warrant is not invalid merely because the officer failed to state the obvious."). The magistrate's determination should prevail in doubtful or marginal cases. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

**Analysis**

Officer Harris's affidavit included the following facts:

> I am a peace officer of the State of Texas, . . . and I have good reason to believe that heretofore, . . . **HOGAN, JOHN DAN** . . . did . . . commit an offense relating to the operating of a motor vehicle while intoxicated namely:
>
> **On October 26, 2008 I Officer CD Harris was assisting A633 (Officer EA Bentley #3480) who had called out with a wrong way driver. Officer Bentley stated that the IMP[6] was traveling westbound in the 200 block of W. 5th St which is for eastbound traffic only. . . . The IMP then turned westbound onto 300 W. 6th ST and ran two red lights . . . . The IMP was also driving recklessly as it swerved around other cars on the roadway. . . . The IMP then turned southbound onto Forest Park Blvd where Officer's [sic] were able to finally catch up to the IMP and conduct a traffic stop. I was on scene . . . by this time**

---

[6]"IMP" is not defined in Officer Harris's affidavit. He testified that "IMP" means an impounded vehicle.

6

**and I was able to make contact with [appellant]. While speaking with him I could smell the strong odor of an alcoholic beverage on or about the person of [appellant] as well as observed that he had bloodshot, watery[,] and heavy eyes. [Appellant] had swayed and unsteady balance as well as swayed, unsteady[,] and staggered walk. At that time I believed he was possibly intoxicated by means of alcohol and requested that [appellant] perform a field sobriety evaluation which yielded the following results: HGN-6 clues with vertical nystagmus, WAT-6 clues, OLS-3 clues. At that time I placed [appellant] under arrest for driving while intoxicated and transported him to [jail] . . . where he refused to provide a breath specimen.**

The affidavit concluded by requesting a warrant to seize appellant's blood and therefore gain evidence for a DWI charge.

The warrant that the magistrate signed incorporated Officer Harris's affidavit and said that the facts contained within it were sufficient to establish probable cause for medical personnel to draw a specimen of appellant's blood. The trial court's conclusions of law state in part,

> Judge Kelms was a neutral, impartial magistrate when she issued the warrant.

> The search warrant was lawful and valid.

> . . . .

> [Appellant's] blood sample was seized pursuant to a search warrant validly executed in accordance with Articles 18.01 and 18.02 of the Code of Criminal Procedure . . . .

Appellant contends that the affidavit did not establish probable cause to issue the warrant for his blood specimen because it contained "conclusory and nonsensical statements." Specifically, appellant asserts that the affidavit is defective because it

7

- describes the driving path of an "IMP" but does not explain to the magistrate what "IMP" means and does not explicitly state that appellant was driving the "IMP" or was otherwise operating a motor vehicle;

- uses "HGN," WAT," and "OLS" without defining those acronyms or explaining the significance of the number of "clues" as related to the acronyms, and therefore the affidavit does not show appellant's intoxication; and

- does not state that Officer Harris is qualified to conduct field sobriety tests or that he has experience in DWI cases.

While the affidavit could have been clearer, in according deference to the magistrate's determination, we cannot agree with appellant that it failed to establish probable cause to show that he had committed DWI and that his blood could provide evidence of that offense. Although the affidavit never specifically stated that appellant was the person who was driving the "IMP," it explained that Officer Harris had good reason to believe that appellant had operated a motor vehicle, described how officers saw a car progress recklessly and illegally through the streets of Fort Worth, explained that officers stopped the car that they observed being driven recklessly and illegally, and then said that at the scene of the stop, Officer Harris made contact with appellant. The affidavit does not indicate that anyone other than appellant (and other police officers) was at the scene (and therefore does not create doubt that someone else could have driven the "IMP"). Thus, we conclude that the magistrate could have reasonably inferred that appellant drove the vehicle described in the affidavit. *See Rodriguez*, 232 S.W.3d at 61.

8

Next, we acknowledge that the affidavit could have been more explicit concerning appellant's performance on the field sobriety tests because it did not define the sobriety tests' acronyms or explain the nature or significance of the tests. But even if we assume that the magistrate did not understand Officer Harris's acronyms or know about the tests, the affidavit still informed the magistrate in plain language that appellant showed fifteen combined clues of intoxication on the tests. And apart from the sentence concerning the tests, the affidavit stated that appellant recklessly drove a vehicle; that he had a "strong odor" of alcohol, "bloodshot, watery[,] and heavy eyes," a swayed and unsteady balance, and a staggered walk; and that he had refused to provide a breath specimen. These facts alone were sufficient to show probable cause that appellant committed DWI. *See State v. May*, 242 S.W.3d 61, 62 (Tex. App.—San Antonio 2007, no pet.) (mem. op.); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.) (mem. op.); *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *see also Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880–81 (Tex. App.—Fort Worth 2009, no pet.) (en banc op. on reh'g) (holding that there was substantial evidence to show probable cause for DWI when the appellee was stopped for speeding, had bloodshot eyes, swayed, smelled like alcohol, and refused to participate in field sobriety tests).

Finally, although the affidavit might have been more complete if it had detailed Officer Harris's experience in DWI cases, we hold that such information

9

was not required to make the affidavit adequate. *See Davis*, 202 S.W.3d at 156 (explaining that an officer's statement that he recognized the odor of methamphetamine reasonably implied that he had experience with the odor generated by the process of cooking methamphetamine). Many of the facts included in Officer Harris's affidavit would lead an untrained, common person to believe that appellant was driving the vehicle while he was intoxicated. *See Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310 (1949) ("In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."); *Small v. State*, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.) (citing *Brinegar* and explaining that probable cause is a "common sense standard requiring only a probability of criminal activity rather than an actual showing of such activity").

Appellant cites a decision from the court of criminal appeals to conclude that Officer Harris's affidavit was invalid because it was conclusory. *See Jones v. State*, 833 S.W.2d 118, 124 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993). In *Jones*, an officer's search warrant affidavit in a murder case attempted to link the defendant to the murder by stating only that the defendant's fingerprints matched fingerprints taken from the scene. *Id.* The court of criminal appeals held that the affidavit was insufficient because there "were no facts that would lead a neutral and detached magistrate to conclude that appellant was the perpetrator of the crime and not merely an ordinary houseguest." *Id.* In contrast,

as explained above, Officer Harris's affidavit provided sufficient facts to allow the magistrate to reasonably infer that appellant committed a crime by operating a motor vehicle in a public place while intoxicated. Other cases relied on by appellant are similarly distinguishable. *See Cassias v. State*, 719 S.W.2d 585, 590 (Tex. Crim. App. 1986) (op. on reh'g) (holding that an affidavit to search a house for drugs was insufficient because it was "too disjointed and imprecise to warrant a man of reasonable caution in the belief that marihuana and cocaine would be found" there); *Taylor v. State*, 54 S.W.3d 21, 27 (Tex. App.—Amarillo 2001, no pet.) (holding that there was no probable cause to search a defendant's home for child pornography based only on the facts that governmental authorities received contraband by someone using an alias, obtained information that the defendant used the alias at some time, and knew where the defendant lived).

For these reasons, we hold that the facts contained within Officer Harris's affidavit, along with reasonable inferences from those facts, allowed the magistrate to conclude that there was probable cause to sign the search warrant. *See Rodriguez*, 232 S.W.3d at 61. The affidavit and warrant complied with the United States and Texas constitutions and article 18.01 of the code of criminal procedure; therefore, the trial court did not err by denying appellant's motion to suppress. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01. We overrule appellant's three issues.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

PUBLISH

DELIVERED:  November 18, 2010